Filed 10/21/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101539 |
| Plaintiff and Respondent, | (Super. Ct. No. 23FE007007) |
| v. | |
| EDWARD JOSEPH RIDDLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Lawrence G. Brown and Satnam Rattu, Judges.  Affirmed.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Kimberley A. Donohue, Assistant Attorneys General, Christopher J. Rench and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Edward Joseph Riddle appeals a judgment entered following his no contest plea to arson of a structure (Pen. Code, § 451, subd. (c)).[1]  He contends that the trial court abused its discretion by terminating his mental health diversion (§ 1001.36)

---

[1]  Undesignated statutory references are to the Penal Code.

1

and refusing his request for public funds to pay for his private mental health treatment program. We will affirm.

## BACKGROUND

At approximately 11:30 p.m. on May 12, 2023, Riddle was high on methamphetamine and woke his sister by banging on the wrought iron gate to her home. She looked out her front door and saw her brother set her doorbell on fire. She extinguished the flames with a container of water. Riddle started another fire in the street gutter, and his sister called the fire department. She was worried about the amount of brush and the possibility that the fire would spread to a tree.

The People charged Riddle with arson of an inhabited structure (§ 451, subd. (b)) and alleged that he had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12), specifically, a conviction for assault with a deadly weapon (§ 245, subd. (a)(1)).

In November 2023, Riddle requested mental health diversion under section 1001.36. He stated that he had been diagnosed with bipolar disorder and substance abuse disorder. He had received substance abuse treatment and maintained his sobriety for five months. He was chronically homeless without a support system but did receive public assistance. His motion attached an assessment by a mental health professional noting, among other things, his long history of using "Methamphetamines/Other Stimulants." The assessment opined that Riddle required treatment in a residential facility, described in the report as a "level 3.1 Clinically Managed Low-Intensity Residential" facility.

The People opposed diversion, arguing that Riddle's mental illness, addiction to methamphetamine, and criminal history raised doubts that he could be treated safely in the community. The People were also concerned that it would be difficult to secure a residential rehabilitation placement in light of Riddle's particular needs.

2

At a December 7, 2023 hearing on the diversion request, the trial court stated that any grant of diversion would have to start with Riddle completing a residential drug treatment program to address his substance use disorder. The court explained that such a program was needed to ensure that his methamphetamine use would not interfere with his mental health treatment. Riddle agreed to participate in residential treatment, and the court stated that it would grant diversion if he were placed in a residential program. Riddle's counsel agreed to contact Walter's House, a residential treatment facility, to seek placement for her client.

On December 21, 2023, Riddle informed the trial court that he had been accepted into Walter's House, and the court granted the request for mental health diversion. Riddle was on a waiting list pending bed availability.

By February 2024, it had become clear that Riddle would not be able to participate in residential treatment at Walter's House. At a February 6 hearing, the trial court confirmed with defense counsel that her client could not be placed at the facility because of issues associated with county regulations governing his Medi-Cal coverage. Riddle asked the court to approve his participation in mental health diversion through an intensive outpatient program with housing at a room and board facility. The court denied the request, stating that it was "not willing to take that step in terms of I think it too great a risk." The court continued: "[T]he conduct here was very concerning, very dangerous. And by all accounts, his behavior was, in fact, fueled by his methamphetamine use and addiction. This was a strongly-opposed application to begin with. [¶] And the Court had indicated that he would need to be accepted to residential rehab before I would grant mental health diversion. If another residential rehabilitation program could be secured, you know where to find me. But I'm not going to release him just to a room and board with the hope that he does intensive outpatient." The court set aside the granting of

3

mental health diversion, without prejudice to reconsidering the matter if another residential program were identified.

On April 8, 2024, Riddle filed a motion asking the trial court to fund his treatment at Walter's House under section 1001.36, subdivision (f)(1)(A)(ii). The motion represented that Riddle's health insurance provider, Sacramento County's Medi-Cal program, had refused to pay for his treatment at Walter's House because the facility did not carry the liability insurance required for treating individuals charged with or convicted of arson offenses. The People opposed the request, and the court issued a tentative ruling denying Riddle's motion.

After hearing from both parties, the trial court adopted its tentative ruling. The court explained that acceptance and participation in a residential treatment program were a "condition precedent" to the court's approval of diversion. When that condition "fell away," Riddle's treatment plan was deficient, resulting in the court's decision to withdraw "the previously granted diversion grant because a fundamental component of the grant was no longer in place." The court further explained that it did not have jurisdiction over Medi-Cal and lacked a reserve of its own funds to pay for residential treatment.

On June 27, 2024, to facilitate a negotiated plea agreement, the People filed an amended information charging Riddle with arson of a structure (§ 451, subd. (c)) and alleging that he had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12). Riddle pleaded no contest to the charge and admitted the prior strike in exchange for a sentence of four years (the low term of two years doubled because of the prior strike). The trial court sentenced Riddle in accordance with the plea agreement. He timely appealed and was issued a certificate of probable cause.

4

DISCUSSION

I.

Riddle first contends that the trial court abused its discretion when it terminated the grant of mental health diversion.

Under section 1001.36, subdivision (b), a defendant is "eligible" for mental health diversion if the defendant has been diagnosed with a qualifying mental disorder and the disorder was "a significant factor in the commission of the charged offense." A defendant is "suitable" for diversion if the "defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment"; the defendant consents to diversion, waives his or her speedy trial rights, and "agrees to comply with treatment as a condition of diversion"; and the defendant "will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c).) Under section 1170.18, subdivision (c), an " 'unreasonable risk of danger to public safety' means an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

" 'Pretrial diversion' " under the statute "means the postponement of prosecution . . . to allow the defendant to undergo mental health treatment" if the "court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i).) A "defendant may be referred to a program of mental health treatment utilizing existing inpatient or outpatient mental health resources." (§ 1001.36, subd. (f)(1)(A)(ii).) "The treatment may be procured using private or public funds, and a referral may be made to a county mental health agency, existing collaborative courts, or assisted outpatient treatment only if that entity has agreed to accept responsibility for the

5

treatment of the defendant, and mental health services are provided only to the extent that resources are available and the defendant is eligible for those services." (*Ibid*.) In cases where diversion is granted and the defendant is subsequently charged with specified crimes, engages in criminal conduct rendering him or her unsuitable for diversion, or is performing unsatisfactorily in the assigned program, a trial court must hold a hearing to determine if criminal proceedings should be reinstated. (§ 1001.36, subd. (g).)

Riddle argues that he did nothing to trigger the trial court's duty to consider terminating diversion under section 1001.36, subdivision (g), such as committing a new criminal offense. He also asserts that the court incorrectly used his dangerousness to find him unsuitable for diversion without substantial evidence that he was an unreasonable risk of committing a statutorily enumerated felony if treated in the community as provided under section 1001.36, subdivision (c)(4). We are not persuaded by these arguments because the trial court did not rely on either of these provisions to set aside its initial decision to allow diversion. Rather, as noted above, the court withdrew the grant of diversion when it became clear that Riddle would not be able to obtain the residential treatment that the court determined was a necessary condition for diversion. The court explained that Riddle's participation in residential treatment had been a "condition precedent" to its grant of mental health diversion, consistent with Riddle's own expert's recommendation that residential treatment was required. Once that condition precedent "fell away," Riddle's treatment plan was deficient, and "a fundamental component of the grant was no longer in place." And because there was no longer a recommended inpatient treatment provider that would "meet the specialized mental health needs of the defendant" (§ 1001.36, subd. (f)(1)(A)(i)), the court was under no obligation to continue Riddle's mental health diversion.

Riddle emphasizes the trial court's statements at the February 2024 hearing that the court was not willing to allow outpatient treatment because it was "too great a risk" in

light of Riddle's dangerous conduct underlying the alleged offense.  Taken in context, however, this was not a finding that Riddle was at risk of committing an enumerated serious felony under section 1001.36, subdivision (c)(4), but rather the court's determination that a room and board facility with intensive outpatient treatment would not meet Riddle's needs in light of his expert's recommendation that he participate in a residential treatment program.  (§ 1001.36, subd. (f)(1)(A)(i); see also § 1001.36, subd. (f)(1)(A)(ii) ["Before approving a proposed treatment program, the court shall consider the request of the defense, the request of the prosecution, the needs of the defendant, and the interests of the community"].)  We conclude that Riddle has not demonstrated that the trial court abused its discretion when it set aside the grant of diversion.  And in light of that conclusion, we reject Riddle's additional claim that the court's erroneous application of the statute violated his due process rights.

## II.

Riddle next argues that the trial court erred when it refused to grant his request for public funding of his private residential treatment at Walter's House.  Specifically, he contends that the court should have ordered the expenditure of public funds pursuant to section 1001.36, subdivision (f)(1)(A)(ii), which says that "treatment may be procured using private or public funds."

We review a trial court's interpretation of a statute de novo.  (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)  When construing a law, "[w]e first ' "look to the statute's words and give them their usual and ordinary meaning," ' as ' "[t]he statute's plain meaning controls the court's interpretation unless its words are ambiguous." ' [Citation.] We construe statutory text in context and ' " 'harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " ' [Citation.]  If, after this analysis, 'the statute is

ambiguous, we may consider a variety of extrinsic aids,' including legislative history." (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1057.)

As noted above, section 1001.36, subdivision (f)(1) defines " '[p]retrial diversion' " and states that mental health "treatment may be procured using private or public funds, and a referral may be made to a county mental health agency, existing collaborative courts, or assisted outpatient treatment only if that entity has agreed to accept responsibility for the treatment of the defendant, and mental health services are provided only to the extent that resources are available and the defendant is eligible for those services." Contrary to Riddle's contentions, we do not read this provision as authorizing or compelling the trial court in this case to issue an order requiring the county to pay for Riddle's treatment, after an existing public program—Medi-Cal—declined to cover the treatment due to the facility's lack of required insurance. Rather, this subdivision authorizes a defendant's participation in a mental health treatment program that is funded publicly *or* privately. (§ 1001.36, subd. (f)(1)(A)(ii).) In that regard, it recognizes a defendant's right to privately pay for mental health diversion treatment, but it does not create a right to unspecified public funds for private treatment not otherwise covered by existing public programs.

Riddle points to legislative history materials, but even if we were to consider this extrinsic aid (see *People v. Rhodius*, *supra*, 17 Cal.5th at p. 1057), it does not support his reading of the statute. Riddle himself acknowledges that nothing in the legislative history indicates that the Legislature specifically contemplated that a defendant would be entitled to public funding to pay for private treatment. The relevant legislative history does show an acknowledgement of increased court, public defender, and district attorney costs associated with establishing eligibility for and monitoring of mental health diversion. (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 215 (2017-2018 Reg. Sess.) Jan. 24, 2018, p. 6; Assem. Com. on Appropriations,

Rep. on Sen. Bill No. 215 (2017-2018 Reg. Sess.) June 25, 2018, p. 1; see also *People v. Braden* (2023) 14 Cal.5th 791, 819-821 [recognizing relevance of legislative history of Sen. Bill No. 215 (2017-2018 Reg. Sess.) in interpreting § 1001.36].) It also acknowledges increased costs to county mental health agencies for defendants being treated through placements with county mental health agencies in cases where the agency accepts responsibility for the treatment. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 215 (2017-2018 Reg. Sess.) Jan. 24, 2018, p. 6.) Had the Legislature intended to allow courts to order the expenditure of public funds for individual defendants' private treatment, we would expect to see a mention of it in the Legislature's discussion of the costs of diversion. The trial court did not err when it declined to order public funding of Riddle's private treatment after Medi-Cal declined coverage for it.

DISPOSITION

The judgment is affirmed.

_____/s/_____
FEINBERG, J.

We concur:

_____/s/_____
BOULWARE EURIE, Acting P. J.

_____/s/_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.